IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

CHARLIE LEE TAYLOR                                                  PLAINTIFF

v.                                               No. 4:17CV83-SA-RP

RICHARD PENNINGTON, ET AL.                              DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Charlie Lee Taylor, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff makes allegations ranging from unfair internal procedures by a prison religious organization to unlawful lockdowns in his prison unit, to denial of adequate medical care. For the reasons set forth below, all of the plaintiff's claims, other than denial of adequate medical care, will be dismissed.

### Charlie Lee Taylor's History of Filing Meritless Cases and Claims

Before proceeding, the court must note Mr. Taylor's lengthy history of abusing the judicial process. Mr. Taylor is no stranger to this court, as he has filed many cases here – and is always a litigant with, to say the least – a brisk motion practice. His filings are often lengthy and meandering. As detailed below, he has been sanctioned by this court, the Fifth Circuit Court of Appeals, and the United States Supreme Court for filing a host of meritless suits and appeals of adverse rulings.

**Charlie Taylor's Strikes, Frivolous Dismissals, and Sanctions:**
***Twelve* Strikes Accumulated**

## Cases Originating in the Northern District

1/11/1999:     *Taylor v. Bryan*, 1:98CV222-LTS – Dismissed, frivolous

3/13/2001:     *Taylor v. Pennington*, 4:01CV198-WAP-JAD – Dismissed, frivolous

9/3/2002:      *Taylor v. Davidson*, 1:02MC6-JAD – Dismissed, failure to state a claim.  Sanction imposed, pauper status denied, must seek permission to file future complaints.

3/18/2004:     *Taylor v. Carlize*, 4:04CV24-MPM-DAS – Dismissed, failure to state a claim

5/26/2004:     *Taylor v. Milton*, 4:04CV133-WAP-SAA – Dismissed, failure to state a claim

        3/28/2005:     **Fifth Circuit**:  *Taylor v. Milton*, 04-60569 – Dismissed, frivolous

        10/14/2005:    **Supreme Court**: *Taylor v. Milton* – Imposed sanction, precluded from proceeding as a pauper

4/20/2005:     *Taylor v. Stanciel*, 4:04CV339-WAP-SAA – Dismissed, failure to state a claim, court imposed sanction requiring Taylor to submit proposed complaints to the Chief Judge for screening

        11/2/2006:     **Fifth Circuit**:  *Taylor v. Stanciel*, 05-60428 – Dismissed, frivolous, $500 sanction

        8/3/2007:      Sanction paid

10/26/2006:    **Fifth Circuit**:  *Taylor v. Cabano*, 05-60526 – Dismissed, frivolous

4/10/2012:     *Taylor v. Sparkman*, 4:11CV98-GHD-SAA – Complaint returned – did not seek permission to proceed with complaint as required in previous sanction

## Cases Originating in the Southern District

6/14/2001:     *Taylor v. Waddle*, 3:01CV183-WHB-AGN – Dismissed, counted as strike

8/1/2001:      *Taylor v. Noblin*, 3:01CV448-WHB-AGN – Dismissed, frivolous, counted as strike

10/3/2001:     *Taylor v. Ezell*, 2:01CV150-CWP-LG – Dismissed, counted as strike

**Note:**

(1)  Charlie Taylor has filed many other federal cases which courts dismissed for reasons not qualifying as strikes:  failure to exhaust, failure to comply with an order of the court, failure to pay the filing fee, etc.

(2)  Also, Mr. Taylor has pursued relief in the Mississippi Supreme Court or Mississippi Court of Appeals some 14 times, for various reasons.

(3)  Finally, Mr. Taylor has also pursued *habeas corpus* relief five times in this court.

## Factual Allegations

Charlie Taylor makes five basic allegations, which the court outlines below.  Of these, only his claim regarding denial of adequate medical care will proceed.

## Internal Procedures of Religious Organization

First, Mr. Taylor alleges that the internal procedures of the Kairos Prison Ministry are unfair. Taylor states that Kairos members are not permitted to elect a Rector each year, which deprives him of his constitutional rights to due process and equal protection.  He alleges that the current entrenched Kairos leadership has formed a "holier-than-thou" clique, driving away other inmates participating in the Kairos Ministry.  Federal courts are, however, powerless to intervene in such matters:

> [T]he First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.

*Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 724–25, 96 S. Ct. 2372, 2387–88, 49 L. Ed. 2d 151 (1976).  Indeed, "religious freedom encompasses the "power (of religious bodies) to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine."  *Id.*, citing *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116, 73 S.Ct. 143, 154, 97 L.Ed. 120 (1952).  Determining the frequency of local Kairos elections certainly falls under the rubric of "matters of church government," and

this court will not interfere in such decisions. This claim must be dismissed for failure to state a claim upon which relief could be granted.

## Improperly Handled Grievances

Second, Mr. Taylor alleges that the defendant Richard Pennington has improperly applied the Mississippi Department of Corrections grievance procedure. Doc. 1 at 4. A prisoner does not, however, "have a federally protected liberty interest in having … grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). The United States District Court for the Norther District of Texas explained this clearly:

> [A]n inmate does not have a constitutional entitlement to an adequate grievance procedure. *See e.g., Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994) (there is no constitutional right to participate in grievance procedures); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430-31 (7th Cir.1996) (inmates do not have a constitutional right to an adequate grievance procedure; any right to inmate grievance procedure is procedural, not substantive, right and, thus, state's inmate grievance procedures do not give rise to liberty interest protected by due process clause); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) (per curiam) (inmates do not have a constitutional right to participate in grievance procedures); *Jenkins v. Henslee,* 2002 WL 432948, *2 (N.D.Tex. Mar 15, 2002) (NO. 3-01-CV-1996-R). Although an adequate grievance procedure is a condition precedent to filing a suit arising under § 1983, *see* 42 U.S.C. 1997e(a), its ineffectiveness or altogether absence does not give rise to a constitutional claim. Hence any alleged violation of the grievance procedure as alleged in Plaintiff's complaint does not amount to a constitutional violation.

*Giddings v. Valdez*, No. 3:06-CV-2384-G, 2007 WL 1201577, at *3 (N.D. Tex. Apr. 24, 2007). For this reason, the plaintiff's claim regarding the adequacy of Mr. Pennington's application of the Mississippi Department of Corrections grievance procedure will be dismissed for failure to state a claim upon which relief could be granted.

## Denial of Adequate Medical Care

Third, Mr. Taylor alleges that the defendants have not provided him a proper cardiovascular diet and have prevented him from receiving a previously-scheduled colonoscopy. It is unclear whether these allegations state a valid claim under 42 U.S.C. § 1983; as such, they will proceed to a

hearing under *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985) to give Taylor an opportunity explain

them further.

## Retaliation

Fourth, Mr. Taylor alleges that Richard Pennington, Director of the Mississippi Department of

Corrections Administrative Remedy Program, has retaliated against him by refusing to process

Taylor's grievances regarding denial of adequate medical treatment. Doc. 1 at 4. Mr. Taylor alleges

that the driving force behind Mr. Pennington's actions is aggravation with Taylor over a 2001 lawsuit

in this court in which Pennington was a defendant: *Taylor v. Pennington*, 4:01CV198-WAP-JAD.

Prison officials may not retaliate against prisoners for exercising their constitutional rights.

*Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims

with skepticism to keep from getting bogged down in every act of discipline prison officials impose.

*Id*. The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific

constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of

that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained

of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995)

(citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A

prisoner seeking to establish a retaliation claim must also show that the prison official's conduct was

sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from

exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL

706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006)

at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v.*

*Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999),

2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*).  Similarly, inconsequential (*de minimis*) acts by prison

officials do not give rise to an actionable retaliation claim.  *See Morris* at 685.

In this case, Mr. Taylor must prove that he engaged in constitutionally protected activity

(seeking redress for grievances), faced significant adverse consequences, and that such action was

taken "in an effort to chill [his] access to the courts or to punish [him]for having brought suit."

*Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5ᵗʰ Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130

L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112,

1114 (5ᵗʰ Cir.1987).  The showing in such cases must be more than the prisoner's "personal belief that

he is the victim of retaliation."  *Woods v. Edwards*, 51 F.3d 577, 580 (5ᵗʰ Cir. 1995).  *Johnson v.*

*Rodriguez*, 110 F.3d 299, 310 (5ᵗʰ Cir. 1997).

The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the

absence of factual allegations to support an inference of a retaliatory motive.  In *Whittington v.*

*Lynaugh*, 842 F.2d 818, 819 (5ᵗʰ Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous

lawsuits against administrators and staff within the Texas prison system.  The defendants then

denied Johnson's request to have his custody status upgraded, and Johnson alleged that the

denial was in retaliation for filing his previous suits.  *Id.*  The Fifth Circuit rejected Johnson's

claim – and explained why courts must insist upon specific factual allegations to support an

inference of retaliation:

> If we were to hold that [Johnson] by his allegations in this case had established a case
> which was entitled to the full panoply of discovery, appointment of counsel, jury trial
> and the like, we would be establishing a proposition that would play havoc with every
> penal system in the country.  Prison administrators must classify and move prisoners.
> It is a virtual truism that any prisoner who is the subject of an administrative decision
> that he does not like feels that he is being discriminated against for one reason or
> another, such as the past filing of a grievance, a complaint about food or a cellmate, or
> a prior complaint that he was not being treated equally with other prisoners.  If we
> were to uphold the further pursuit of [Johnson's] complaint in this case we would be

opening the door to every disgruntled prisoner denied the next level of trustyship, reassigned to another prison job, moved to another cell, [or] claiming his shoes were uncomfortable, to bring such a suit.

*Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988). Prisoners routinely file grievances and lawsuits against prison staff on an ongoing basis, for any number of reasons. As such, it is not uncommon for a prisoner to file a grievance or suit, then receive a Rule Violation Report sometime thereafter. Thus, to avoid turning nearly every charge of prison rule violations against a prisoner into a claim of retaliation, courts insist upon additional allegations or evidence to substantiate a retaliation claim, such as prison staff issuing threats of disciplinary action if an inmate files further grievances, staff members pulling an inmate aside to threaten him, members of prison staff perpetrating unprovoked acts of violence against an inmate, or prison staff members wholly fabricating charges of prison rule violations against an inmate. *See Decker v. McDonald*, 2010 WL 1424322 (E.D. Tex. 2010) (Magistrate Judge's Report and Recommendation) (unpublished), adopted by the District Court, 2010 WL 1424292 (E.D. Tex.) (unpublished).

In this case, Mr. Taylor has not alleged facts sufficient to support a claim of retaliation. First, the case Mr. Taylor uses to establish a basis for retaliation was filed in *2001*, some 16 years ago. It is simply unfathomable that Mr. Pennington would wait more than a decade and a half to retaliate for the filing of a lawsuit. In addition, that suit, *Taylor v. Pennington*, 4:01CV198-WAP-JAD, was dismissed as frivolous – *before the defendants were even served with process*. Thus, it is doubtful that Mr. Pennington was even aware of the suit. Indeed, Mr. Pennington, as the Director of the Administrative Remedy Program, has been named as a defendant in many suits: at least 49 in this district and 10 in the Southern District. The sheer number of cases against him makes it even less likely that he would be aware of any one in particular. In this situation, Charlie Taylor has only his

personal belief that he is the victim of retaliation, and that is insufficient to sustain such a claim.

*Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th

Cir. 1997). For these reasons, Mr. Taylor's claim of retaliation against Richard Pennington will be

dismissed for failure to state a claim upon which relief could be granted.

### Improper Lockdowns of Taylor's Unit

Fifth, Charlie Taylor alleges that defendant Sonja Stanciel has unlawfully and unnecessarily

locked down the plaintiff's prison facility. Taylor believes that these lockdowns were unneeded

because:

> [there was] no threat to staff nor offenders. The victim was beaten by his own gang
> for gambling without any money – disciplining him for causing or trying to start
> trouble on the zone. A fist fight, no weapon, no major medical, no Rule Violation
> Reports written, and staff was not hurt or in danger.

Doc. 1 at 54. In response to Taylor's grievance about the lockdowns, Earnest Lee, Superintendent of

the Mississippi State Penitentiary, stated that the lockdowns were necessary because of altercations

between inmates and introduction of contraband into the facility. Doc. 1 at 56. A prison policy or

practice is constitutional as long as it is reasonably related to a legitimate penological objective of the

facility. *Hay v. Waldron*, 834 F.2d 481, 487-87 (5th Cir. 1987). Mr. Taylor makes light of an inmate-

on-inmate beating in his unit – insisting that a full lockdown was unnecessary. However, the

lockdown is reasonably related to the legitimate penological interest of inmate and guard safety and

security, and the court will not second-guess the judgment of the Superintendent and Warden, who are

on-site and familiar with the conditions at the facility. These allegations will also be dismissed for

failure to state a claim upon which relief could be granted.

### Confiscation of Legal Material

Sixth, Taylor alleges that defendant Sonja Stanciel illegally confiscated his legal materials,

thus interfering with his access to the courts while he prosecutes an application for post-conviction

collateral relief in state court. He alleges that he is unable to prosecute the application without access

to those legal materials. Mr. Taylor's various grievances and the responses to them indicate that Ms.

Stanciel ordered the confiscation of Mr. Taylor's box of legal documents because they were more than

the allowable 6 inches thick. Doc. 1 at 63-65, Doc. 9 at 17-18. According to the Administrative

Remedy Program responses, Mr. Taylor has access to his documents, but he must swap them out so

that he has no more than 6 inches of them in his cell at a time. *Id*. Mr. Taylor's application for post-

conviction relief is still pending before the Mississippi Supreme Court. *See Taylor v. State of*

*Mississippi*, 2015-M-01150 (Mississippi Supreme Court).

Prisoners possess a constitutional right of access to courts, including having the "ability . . . to

prepare and transmit a necessary legal document to court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th

Cir. 1996), quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123

(1994). The right of access to the courts is limited to allow prisoners opportunity to file nonfrivolous

claims challenging their convictions or conditions of confinement. *Jones v. Greninger*, 188 F.3d 322,

325 (5th Cir. 1999). "Interference with a prisoner's right to access to the courts, such as delay, may

result in a constitutional deprivation." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citations

omitted).

However, "[a] denial-of-access-to-the-courts claim is not valid if a litigant's position is not

prejudiced by the alleged violation." *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998);

*Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992), *cert. denied,* 504 U.S. 988 (1992), citing

*Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). It is only when a prisoner suffers some

sort of actual prejudice or detriment from denial of access to the courts that the allegation becomes one

of constitutional magnitude. *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *see*

*Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). To prove his claim, a plaintiff must show real

detriment – a true denial of access – such as the loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding. *See Oaks v. Wainwright*, 430 F.2d 241 (5ᵗʰ Cir. 1970).

An inmate's right of access to the courts may be fulfilled in ways other than access to a law library. *Lewis v. Casey*, 518 U.S. 343, 351,116 S.Ct. 2174, 2180 (1996). The right of access to the courts is not "an abstract, freestanding right to a law library or legal assistance[;] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id*. When a state provides adequate legal assistance to a prisoner, the state has fulfilled its obligation to provide him access to the courts – and need not provide access to a law library. "Inmates are entitled to either adequate law libraries or adequate assistance from persons trained in the law, but certainly not both." *Meeks v. California Dep't of Corrections*, 1993 WL 330724 (9ᵗʰ Cir. Aug. 31, 1993), citing *Bounds*, 430 U.S. at 828.

In the papers Taylor has presented to the court, he has not alleged that defendant Sonja Stanciel has utterly deprived him of his legal files. Instead, he alleges that she confiscated his box of legal materials and put them in the personal property locker. The documents the plaintiff has provided to the court show that he still has access to his legal materials – but may only possess a six-inch stack of documents at a time. Mr. Taylor has filed multiple motions for enlargement of time while prosecuting his application for state post-conviction collateral relief in state court. *Taylor v. State of Mississippi*, 2015-M-1150.[1] In these motions, he complains that Warden Stanciel confiscated his box of legal materials. *Id*. The documents attached to these motions show that Taylor still has access to those materials – but cannot keep more than a six-inch stack of them in his cell. *Id*. Thus, he must use some materials, then swap them out when he needs more. The Mississippi Department of Corrections

---

[1] The court takes judicial notice of prior proceedings involving the petitioner, both state and federal. *Moore v. Estelle*, 526 F.2d 690, 694 (5ᵗʰ Cir. 1976).

policy Mr. Taylor provided with his complaint states that prison officials must make a log entry each time an inmate accesses stored legal materials. Doc. 1 at 65. Taylor did not provide a copy of the log with his complaint, and he has not alleged a complete denial of access to his files. He seems to have chosen his words carefully – stating only that he cannot access his entire bankers box of legal materials at once – without mentioning whether he has access to six inches' worth of documents at a time. He certainly did not object to Ms. Stanciel's assertion that he is free to request the documents he requires – and to switch them out when he needs others.

The court knows from many similar cases over the years that all inmates in the Mississippi Department of Corrections face this restriction. In the present case, Mr. Taylor even included the Mississippi Department of Corrections policy regarding possession of legal documents in his complaint. Doc. 1 at 65. Indeed, Mr. Taylor made a substantially identical claim in a previous case before this court. *Taylor v. Stanciel*, 4:04CV339-WAP-SAA (Memorandum Opinion of March 17, 2005). In that case, Mr. Taylor had multiple bankers boxes of legal materials in the property room – more than the number allowed under Mississippi Department of Corrections policy. *Id.* Though he was invited many times to provide the name and address of someone in the Free World who could keep the excess boxes, he refused to do so. *Id.* After many warnings, prison personnel finally destroyed the documents. *Id.* Thus, in the earlier case, Mr. Taylor's "stubborn refusal to cooperate in that process" led to the destruction of his legal documents. *Id.* It appears that Mr. Taylor is now stubbornly refusing to follow the prison procedure for exchanging legal papers into and out of his box in storage at the facility.

In addition, the Mississippi Supreme Court's public website reveals that the case for which he requires portions of his legal files is still pending. *Taylor v. State of Mississippi*, 2015-M-1150. Mr. Taylor has requested – and received – multiple extensions of his briefing deadline in that court, based

upon the confiscation of the bankers box of documents from his cell.  *Id.*  He most recently requested

such an extension on October 16, 2017.  *Id.*  Hence, he has suffered no harm to any legal position

because his box of documents was placed in the property room.  For these reasons, the plaintiff's

allegations regarding denial of access to the courts should be dismissed for failure to state a

constitutional claim.

### Conclusion

For the reasons set forth above, all of the plaintiff's claims in this case will be dismissed,

except for his claims against Dr. Kyper, Medical Director for the Mississippi State Penitentiary, for

denial of adequate medical care regarding a cardiovascular diet and a colonoscopy.  A judgment

consistent with this memorandum opinion will issue today.


**SO ORDERED**, this, the 7th day of November, 2017.


**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**